# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 1, 2023           Decided April 21, 2023

No. 22-5185

MANDAN, HIDATSA AND ARIKARA NATION,
APPELLEE

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, ET AL.,
APPELLEES

STATE OF NORTH DAKOTA,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-01918)

———

*James M. Auslander* argued the cause for appellant State of North Dakota. With him on brief were *Nessa Coppinger* and *Peter J. Schaumberg*.

*Timothy Purdon* argued the cause for appellee Mandan, Hidatsa and Arikara Nation. With him on brief were *Philip Baker-Shenk* and *Steven D. Gordon*.

*Mary G. Sprague*, U.S. Department of Justice, argued the cause for appellees Robert Anderson, Debra A. Haaland, and United States Department of the Interior. With her on brief was

*Rachel Heron*.

Before: SRINIVASAN, *Chief Judge*, PILLARD, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

Concurring opinion filed by *Circuit Judge* PILLARD.

RANDOLPH, *Senior Circuit Judge*:  This is an appeal from the district court's denial of the State of North Dakota's supplemental motion to intervene in the lawsuit against the Department of the Interior brought by the Mandan, Hidatsa and Arikara Nation, recognized as the Three Affiliated Tribes of the Fort Berthold Indian Reservation.[1]

To put the case succinctly, the State claims that it owns the bed of Missouri River running through the Reservation.  The Tribes' complaint asserts that the Tribes, not the State, own the riverbed.  An affidavit of North Dakota's Director of Mineral Management, executed in 2020, stated that North Dakota had issued approximately 255 oil and gas leases to the Missouri Riverbed within the Reservation's boundaries and that the lessees were withholding royalty payments pending resolution of this dispute.  As of 2020, the State estimated that the withheld payments were in excess of $116 million.

The Tribes' action against the Interior Department and several of its officers in their official capacity was in four

---

[1] The Fort Berthold Indian Reservation, located in central North Dakota, consists of roughly one million acres, nearly half of which is owned by Native Americans, either as individual allotments or by the Tribes themselves.

counts.

Count I and Count II alleged that the Tribes owned the Missouri Riverbed within the Reservation, and yet the State had granted, under State law, mineral leases to the riverbed property and were collecting royalties. Count I claimed that a 2020 opinion (M-37056) of the Solicitor of Interior concluding that the State owned the riverbed and its minerals violated the Administrative Procedure Act, 5 U.S.C. § 706. In Count II, the Tribes asserted that the new 2020 Interior opinion was the result of improper pressure on Interior by the State of North Dakota and so violated the APA. Before that 2020 Opinion, the Interior Department had taken the position that the Tribes owned the Missouri Riverbed, a position it first espoused in 1936.

Count III of the Tribes' complaint sought an accounting "regarding the Missouri Riverbed and underlying mineral estate within the Reservation, including the production and extraction of minerals from this trust property and the value of royalties owed thereon." Compl., Prayer for Relief ¶ C. Count IV alleged, among other things, that Interior had breached its fiduciary duty to protect the Tribes' beneficial ownership of the riverbed; this Count also sought an order compelling Interior to "collect, deposit and invest, or pay over funds" owing to the Tribes from the extraction of minerals underlying the riverbed.

In August 2020 when North Dakota became aware of the Tribes' lawsuit in the federal district here, the State filed an "emergency" motion to intervene. Invoking Federal Rule of Civil Procedure 24(a)(2) and claiming a proprietary and sovereign interest in the riverbed, the State claimed a right to intervene with respect to Count I.[2] The Tribes opposed the

---

[2] The State also sought permissive intervention, *see* Rule 24(b), and reserved its right to intervene on the other three Counts when and

State's motion on the ground that the Interior Department would adequately protect the State's interest in the riverbed and its minerals. (At the time, the position of the Interior Department was the same as the State's, that the State owned the Missouri Riverbed.) The district court granted the State's motion to intervene, thus making the State a party in the case. As such, the State filed an answer to the first sixty-nine paragraphs of the Tribes' Complaint, which included the six paragraphs comprising Count I.

By 2022, with the case still pending, the Administration had changed and a new Interior Solicitor was in office. This Solicitor withdrew his predecessor's 2020 opinion and declared in an opinion (M-37073) that the riverbed and its minerals belonged to the Tribes. The Interior Department informed the district court of the new Solicitor opinion, and stated that Interior's Bureau of Indian Affairs had recorded title to the disputed lands in its Office of Land Titles and Records as held by the United States in trust for the Tribes.

With agreement of the Tribes, the Interior Department, and North Dakota, the district court dismissed as moot Counts I and II, and part of Count IV. The court also stated its view that North Dakota would remain a party and did not need to file another intervention motion with respect to Count III and the remainder of Count IV.

The Tribes, now joined by the Interior Department, filed oppositions to the State's continuing as a party. In response, the State moved again to intervene with respect to the remaining Counts. This time the district court denied the State's intervention motion, a ruling that is now the subject of the

_____

if they became ripe for adjudication.

State's appeal.[3]

In support of its second motion to intervene, North Dakota claimed that the court, in order to decide the questions posed by Count III and the remainder of Count IV, would have to resolve the title dispute. The district court responded that "there [was] no longer a live controversy before the Court on that issue." The court explained: "At various points, the State argues that 'an M-Opinion does not establish legal title' and that, as a result, a dispute remains. But the Court is not relying on the new M-Opinion as establishing legal title; the recordation accomplished that."

The district court's ruling was mistaken. As then-Judge McConnell held for the court in *Southern Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735 (10th Cir. 2005), Interior lacks "authority to adjudicate legal title to real property," which "is a judicial, not an executive function." *Id.* at 752. The Interior Department concedes as much. The action of the Bureau of Indian Affairs recording title in its records office therefore could not "establish legal title," as the district court supposed. As Interior stated in its brief, "there has been no final determination of title to the Missouri riverbed."[4]

---

[3] The United States has not filed a quiet title action with respect to the Missouri Riverbed as it did in *Montana v. United States*, 450 U.S. 544 (1981), to settle a dispute between the State of Montana and the Crow Tribe about title to the riverbed of the Big Horn River within the Crow Reservation. *Id*. at 549.

[4] In its answer to the Tribes' original complaint, Interior admitted that in 1936 the Interior Solicitor rendered an opinion (M-28120) that the Tribes owned the Missouri Riverbed. But Interior asserted that "Opinion M-28120 could not have and did not establish or vest in [the Tribes] title to the bed of the Missouri River running through the Fort Berthold reservation." Federal Defendants' Answer to Plaintiff's

What we have just written puts in the correct light North Dakota's right to intervene under Rule 24(a)(2) with respect to the remaining Counts in the Tribes' complaint.

There is no doubt that the State satisfied the Rule's requirement that the intervention motion must be timely. *See NAACP v. New York*, 413 U.S. 345, 365–66 (1973).

Another requirement of Rule 24(a)(2) is that no existing party in the action would adequately represent the movant's interest. Interior admits that in the district court it did not oppose the State's motion on the ground that it "could adequately represent the State's claimed interest in the historical riverbed had title been at issue in the remaining claims." Interior's position is understandable. The movant's burden of showing inadequate representation is "minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972). Interior, having started out as an ally, is now North Dakota's adversary. That in itself is enough to disqualify Interior as a faithful representative of North Dakota's interest in this lawsuit.

There are two questions remaining with respect to Rule 24(a)(2). (The Tribe opposes intervention on a different ground, which we will get to in a moment.)

One is whether, in the Rule's language, North Dakota "claims an interest relating to the property or transaction that is the subject of the action." Several of our opinions, reformulating this requirement, state that the movant must "demonstrate a legally protected interest in the action." *E.g.*, *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013); *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir.

---

Compl. ¶¶ 3, 36.

2008); *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). This restatement – which the district court quoted – runs the risk of being misconstrued. Rule 24(a)(2) does not require an "interest in the action." The "interest" is in the "property or transaction." And there is no requirement that the movant "demonstrate" the interest, if "demonstrate" means, as it often does, "prove." All that is required is a "claim." *See Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 77 (D.C. Cir. 1988); *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1291 (D.C. Cir. 1980).

Does North Dakota "claim[] an interest relating to the property . . . that is the subject of the action"? Of course it does. The "property" is the Missouri Riverbed, its minerals and the royalties from the mining leases the State has issued. There can be no doubt that this "property" is "the subject" of Count III and the remainder of Count IV. Count III states:

> The Court should enter an order directing the DOI to provide an accounting to the MHA Nation, in accordance with the DOI's statutory, regulatory, and trust obligations, regarding the Missouri Riverbed within the Reservation and the underlying mineral estate, and the production and extraction of minerals from that property, and all royalties due and/or collected on such minerals.

Compl. ¶ 83. Count IV seeks a court order compelling Interior "to administer and account for the [Tribes'] mineral rights in the lands underlying the Missouri Riverbed within the Reservation" and "to collect, deposit and invest, or pay over funds owing" to the Tribes from the extraction of minerals underlying the riverbed. Compl. ¶ 89b & c.

The only remaining question under Rule 24(a)(2) is whether the district court's disposition of the Tribes' suit might "as a practical matter impair or impede" the State's ability to protect its property interest. It is partly on this ground that Interior opposes the State's intervention. Interior's argument is that the district court "can" – not "must," not "should," not "would" – adjudicate the remainder of the Tribes' complaint without impairing the State's interest in the riverbed and its minerals and the royalties being held by the State's lessees. This "can" happen, Interior says, because the court may avoid the title question and it "has considerable discretion in deciding whether to afford injunctive relief" to the Tribes. Rule 24(a)(2), however, does not require the State to run the risk. Professor Kaplan, the Reporter on the 1966 revision of Rule 24(a), pointed out that the new Rule 24(a)(2) "invites us to see that the practical consequence to the applicants of being denied intervention is that they cannot stop a settlement nor, if dissatisfied with the decree entered after contest, press their contentions on appeal; they are remitted, instead, to subsequent independent private actions in which it would be hard (although not impossible) to induce the courts to grant them better relief than was accorded by the settlement." Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I),* 81 HARV. L. REV. 356, 405 (1967).

We leave to the last the Tribes' argument on appeal that the Quiet Title Act, 28 U.S.C. § 2409a, barred the State's motion to intervene.[5] The district court, in its opinion denying the State's supplemental motion to intervene, neither relied upon nor even mentioned the Quiet Title Act. Because the district court never

---

[5] The Act waives the sovereign immunity of the United States for actions to decide title to "real property," but excludes "trust or restricted Indian lands." 28 U.S.C. § 2409a(a).

addressed the Act or sovereign immunity, we leave these matters for the district court to decide on remand if they become at issue.[6] *See Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 829 n.34 (5th Cir. 1967) (rejecting the argument that sovereign immunity barred intervention because that was a matter to be determined, if at all, "on the merits on remand").

*Reversed and remanded.*

---

[6] Because we reverse on other grounds, we do not reach North Dakota's arguments regarding permissive intervention.

PILLARD, *Circuit Judge*, concurring:  I agree that North Dakota is entitled to intervene of right, insofar as the Mandan, Hidatsa, and Arikara Nation seeks in Count IV to compel Interior "to collect, deposit and invest, or pay over funds" from the state's mineral leases.  Compl. ¶ 89c (J.A. 32).  I admit to some skepticism that the Nation's suit could, in North Dakota's absence, jeopardize the state's interest in mineral royalties held by state lessees; after all, no party identified a theory under which the Nation could obligate Interior to collect those royalties in this lawsuit, rather than in some future proceeding. But the Nation's complaint says what it says.  And Rule 24(a)(2) does not require that the state might be bound as a matter of *res judicata* by a judgment in its absence.  Rather, a practical impediment to North Dakota's interest is enough to warrant intervention.  Thus, so long as the Nation continues to seek an order to recoup the royalties, I agree that the district court's disposition of the Nation's suit "may as a practical matter impair or impede" the state's interest in those royalties.

I write separately to underscore what is (and is not) at issue in the Nation's suit.  North Dakota claims that the remaining counts "assert alternative theories to deprive North Dakota of its title to the bed [of] the Missouri River and underlying minerals."  N.D. Suppl. Mot. at 2 (S.A. 2).  That seems an overstatement.  In its 2022 opinion, Interior reverted to its longstanding position that the United States holds title to the historical Missouri riverbed and underlying mineral estate in trust for the Nation.  All the Nation now asks is that Interior "live[] up to its responsibilities and duties" as trustee.  Oral Arg. 1:26:10-:18.  The Nation seeks an "accounting" from Interior—that is, factual information about riverbed mineral revenues—and an order directing Interior to "administer and account" for its mineral rights.  Compl. ¶¶ 83, 89b (J.A. 30-31). Nowhere does the Nation (or, for that matter, Interior) ask the district court to resolve competing claims over title to the riverbed.  But in Count IV the Nation does ask Interior "to collect, deposit and invest, or pay over funds owing" to the

Nation.  *Id.* ¶ 89c (J.A. 32).  Carrying out such relief would seem to require resolving the ownership question in which North Dakota has an undeniable interest.

While North Dakota is entitled to protect its interests insofar as they may be implicated by the Nation's claims against Interior, the state cannot use the intervention procedure to transform a suit over Interior's trust obligations into one over title to the riverbed.  Ordinarily, "[a]n intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding."  59 AM. JUR. 2D *Parties* § 227 (2023); *see, e.g.*, *Ill. Bell Tel. Co. v. FCC*, 911 F.2d 776, 786 (D.C. Cir. 1990); *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990).  The Nation thus might clarify on remand whether its prayer for relief from Interior stops short of calling for adjudication of title.  And, to prevent North Dakota from seeking to alter the nature of this suit as the Nation frames it, the district court may on remand impose "appropriate conditions or restrictions" on North Dakota's intervention, as "responsive among other things to the requirements of efficient conduct of the proceedings." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 737 n.11 (D.C. Cir. 2003) (quoting FED. R. CIV. P. 24(a) Advisory Committee's Note (1966 amendments)).  Indeed, such restrictions are sometimes necessary to prevent lawsuits "from becoming fruitlessly complex or unending," which would ill serve the policies behind intervention of right. *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir. 1969) (en banc).